UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ALLEN J. HANSON,<br>    *Plaintiff*,<br><br>v.<br><br>STATE OF RHODE ISLAND<br>DEPARTMENT OF CORRECTIONS,<br>ET AL.<br>    *Defendants*. | C.A. No. 1:17-cv-00598-WES-PAS |

## MOTION TO DISMISS

Now come the Defendants, Rhode Island Department of Corrections (RIDOC), Correctional Officer Panerello and Correctional Officer Grady in their official capacities only (collectively "State" or "Defendants"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, hereby move to dismiss the Complaint filed in this civil action by Plaintiff Allen J. Hanson ("Plaintiff" or "Hanson"). In support of their Motion, the Defendants submit the accompanying Memorandum of Law.

WHEREFORE, Defendants respectfully request that this Motion to Dismiss be granted.

                                    Respectfully submitted,

                                    DEFENDANTS, in official capacity only,
                                    By Their Attorney,

                                    PETER F. KILMARTIN
                                    ATTORNEY GENERAL


                                    /s/ *Adam J. Sholes*_____
                                    Adam J. Sholes, Bar No. 7204
                                    Assistant Attorney General
                                    150 S. Main Street, Providence, RI 02903

(401) 274-4400 EXT. 2219  
Fax No. (401) 222-3016  
ajsholes@riag.ri.gov

**CERTIFICATE OF SERVICE**

      I, the undersigned, hereby certify that a copy of the within Motion was filed via the ECF filing system on this 27th day of Jun 2018 and that it is available for viewing and downloading. I also hereby certify that I mailed a copy of the foregoing Motion by first class mail, postage prepaid on this 27th day of June 2018 to:

**Allen J. Hanson,** *Pro Se*  
ID# 129924  
ACI – Intake Service Center  
P.O. Box 8249  
Cranston, RI  02920

                            */s/ Adam Sholes*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| ALLEN J. HANSON,<br>*Plaintiff,* | )<br>)<br>)<br>) |  |
| v. | )<br>) | C.A. No. 1:17-cv-00598-WES-PAS |
| STATE OF RHODE ISLAND<br>DEPARTMENT OF CORRECTIONS,<br>ET AL.<br>*Defendants*. | )<br>)<br>)<br>)<br>)<br>) |  |

## MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

### I.     INTRODUCTION

Defendants, Rhode Island Department of Corrections ("RIDOC"), Correctional Officer Panerello ("Panerello") and Correctional Officer Grady ("Grady") in their official capacities only (collectively "State" or "Defendants"),[1] respectfully submit this Memorandum of Law in support of their Motion to Dismiss. Defendants move to dismiss the Complaint filed in this civil action by *pro se* inmate Plaintiff, Allen J. Hanson ("Plaintiff" or "Hanson"). Plaintiff failed to exhaust his administrative remedies under the RIDOC Grievance Procedure. Further, because Defendants have only been served in their official capacities, they are not "person[s]" within the meaning of section 1983. For the reasons set forth herein, Defendants respectfully request that their Motion to Dismiss be granted.

### II.    BRIEF STATEMENT OF FACTS

---

[1] Defendants have been served in their official capacities only. The filing of this pleading should not be construed as a waiver of service.

Plaintiff is an inmate at the Intake Service Center in Cranston, R.I. ECF No. 1: Complaint at ¶ 1(A). Plaintiff alleges that, on May 26, 2017, Panerello assaulted him by kicking both his ankles very aggressively with her boots, causing physical and emotional pain, including a mental breakdown, and leaving bruises. See ECF No. 1 at ¶¶ IV(A), (D). Plaintiff also claims that he is being denied grievance forms, and that Grady "talked inappropriate" to him in an interview room. Id. at ¶ IV(A). Hanson claims violations of 42 U.S.C. § 1983. Id., generally. Plaintiff seeks relief from this Court in the form of a reprimand of the RIDOC and the correctional officers, a change in policy making grievance forms readily available, and $15000 for damages. Id. at ¶ VI.

On June 7, 2018, Assistant Attorney General Neil F.X. Kelly,[2] accepted service for Defendants in their official capacity only. See ECF No. 13: Process Receipt and Return. None of the Defendants have been served in their individual capacities. Id.

Hanson concedes that the facility where his claim arose has a grievance procedure, but that he did not complete the RIDOC grievance process. ECF No. 1 at ¶ VII(B),(D).[3] Pursuant to the Prison Litigation Reform Act and RIDOC policy, Hanson was required to exhaust his claim administratively prior to bringing a claim with this Honorable Court. In addition to Hanson conceding that he did not exhaust his

---

[2] Under Federal Rule of Civil Procedure 4(e), an individual may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made;" or "(A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e). Pursuant to Rule 4(e)(4) of the R.I. Superior Court Rules of Civil Procedure, the method to serve the state is by "delivering a copy of the summons, complaint…to the attorney general or an assistant attorney general."
[3] Indeed, the court-issued form filled out by Plaintiff explicitly warns him that "Your case may be dismissed if you have not exhausted your administrative remedies." ECF No. 1 at ¶ VII.

administrative remedies, Cory Cloud, the Grievance Coordinator for the RIDOC provided an affidavit that confirms Plaintiff's admission.[4] In pertinent part, Mr. Cloud attests:

- From February 10, 2014 to the present, the Department of Corrections has maintained a Grievance Policy (#13.10-2) which provides an informal first step to request for resolution of a grievance and a formal two-tiered level procedure for the filing of inmate grievances. Exhibit A to Affidavit, *Grievance Policy*.

- All inmates/detainees are permitted to file a grievance concerning the conditions of their confinement, an issue pertaining to the interpretation or implementation of any departmental policy, access to privileges, services or programs, individual employee actions, including access to the grievance procedure or the provision of grievance forms, any reprisal for use of the inmate grievance procedure and loss or damage to property. Exhibit A to Affidavit, *Grievance Policy*.

- The informal first step requires the grievant to give his/her block officer or area Lieutenant a "pink slip" requesting a resolution to the grievance. Exhibit A to Affidavit, *Grievance Policy*.

- The grievant may then proceed to the formal two-tiered grievance procedure. The first level requires the grievant to file a grievance with the Warden of the facility that is implicated. Exhibit A to Affidavit, *Grievance Policy*.

- The second level of a grievant's administrative remedy is to appeal to the Director of the Department of Corrections. Exhibit A to Affidavit, *Grievance Policy*.

- I am designated and sworn by the Director to coordinate and monitor the Department inmate grievance procedure and I receive and review all grievances at the second level.

- I have reviewed the files and records maintained in my office relative to inmate/detainee grievances. I thoroughly checked said records and found that the Plaintiff has filed a level-1 grievance on November 20, 2017 regarding an assault, which is attached to the Defendants' motion to dismiss and is numbered in my files as 2018-0035. Exhibit B to Affidavit, *Grievance.* Said grievance was denied at the first level. Upon being denied, Plaintiff did not appeal to the second level.

- Plaintiff also has filed a second level-1 grievance on January 20, 2018 regarding a disciplinary infraction, which is attached to the Defendants' motion to dismiss and

---

[4] While not necessary to this Court's review of Defendant's Motion to Dismiss in light of Hanson conceding he did not exhaust the administrative procedure, Defendant has attached the Affidavit of Cory Cloud, as Exhibit A, which confirms Hanson did not exhaust his administrative remedies. To the extent this Court relies on the Affidavit separately from Plaintiff's own statement within the Complaint that he did not exhaust his administrative remedies, Defendant asks that this Court convert the instant Motion into a motion for summary judgment.

is numbered in my files as 2018-0063. Exhibit C to Affidavit, *Grievance.* Said grievance was denied at the first level. Upon being denied, Plaintiff did not appeal to the second level.

- Plaintiff has recently filed a level-1 grievance on June 3, 2018, wherein he challenges the Departmental order(s) imposed against him to pay restitution for the law books he destroyed in September and/or October 2017. This grievance is numbered in my files as 2018-0234 and remains pending at this time. Although this grievance is pending at the level-1 stage and is not before me, the grievance was clearly filed out-of-time, as Plaintiff only had 5 days from the incident/situation to file a grievance. See Exhibit A, *Grievance Policy* at III.B.2.c.

- After a due and diligent search, my office maintains no record of a level-2 grievance appealing the level-1 grievance numbered 2018-0035 or 2018-0063, to my office and I do not recall ever receiving a level-2 grievance appealing these level-1 grievances.

- After a due and diligent search, my office maintains no record of any additional level-1 grievances related to this matter.

Exhibit A: Affidavit of Cory Cloud.[5]

## III.  LEGAL STANDARD

A complaint will only survive a motion to dismiss for failure to state a claim upon which relief may be granted if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Okpoko v. Heinauer, 796 F.Supp.2d 305, 320 (D.R.I. 2011) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007)). Such a complaint is considered plausible when the plaintiff pleads facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. Twombly, 550 U.S. at 556. Determining plausibility is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). When considering a motion to dismiss, the Court accepts factual

---

[5] Mr. Cloud attached exhibits to his Affidavit. Within the Affidavit are exhibits labeled A-D. Exhibit A is the RIDOC Grievance Policy and the remaining exhibits contain specific grievances.

allegations as true. See Id. at 681. This presumption of truth does not extend to legal conclusions that are unsupported by factual allegations. Id. Thus, "threadbare recitals of the elements of a cause of action" in a complaint cannot survive a motion to dismiss. Twombly, 550 U.S. at 555 (2007).

IV. **ARGUMENT**

1. **Hanson Has Failed to Exhaust His Administrative Remedies**

    A. **Legal Background of the Prison Litigation Reform Act**

    The Prison Litigation Reform Act of 1995 ("PLRA"), amended 42 U.S.C. § 1997e(a), provides in its entirety:

    > No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. (Emphasis added).

    In Booth v. Churner, 532 U.S. 731 (2001), the Supreme Court examined both emphasized phrases. There, an inmate lawsuit claimed that correctional officers violated the Eighth Amendment by assaulting him and denying him medical attention. Inmate Booth sought various forms of relief, including monetary damages. Pennsylvania's Department of Corrections provided a grievance system able to address Booth's allegations; however, it had no authority to award the monetary damages. 532 U.S. at 734.

    Before filing a civil action, Booth availed himself of the first grievance level, but he "never sought intermediate or final administrative review after the prison authority denied relief." Id. Because Booth did not exhaust "administrative remedies … available" within the meaning of § 1997e(a), the District Court dismissed the lawsuit and the Third Circuit affirmed. On certiorari, the Supreme Court identified the issue as

5

"whether or not a remedial scheme is 'available' where . . . the administrative process has authority to take some action in response to a complaint, but not the remedial action an inmate demands to the exclusion of all other forms of redress." Id. at 736. The Booth Court responded affirmatively. The Court observed that § 1997e(a)'s phrase "such administrative remedies as are available," requires "a prisoner to exhaust the grievance procedures offered, whether or not the possible responses cover the specific relief the prisoner demands." Id. at 738. Thus, the Court concluded that "Congress's imposition of an obviously broader exhaustion requirement," provided compelling evidence of its intent to require prisoners to exhaust all available administrative remedies prior to filing suit, even if the specific relief sought is not administratively available. Id. at 740-41.

Following Booth, the Supreme Court examined the phrase "prison conditions," and held that the "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

In a later case, the Court considered the issue of whether a prisoner can satisfy the PLRA's exhaustion requirement by filing an untimely or procedurally defective grievance. Woodford v. Ngo, 548 U.S. 81 (2006). The Court "[held] that proper exhaustion of administrative remedies is necessary" under the PLRA. Id. at 84. Moreover, the Court deemed exhaustion "mandatory," writing: "Exhaustion is no longer left to the discretion of the district court, but is mandatory." Id. at 85. The Court fully sets forth its rationale and discusses how the PLRA exhaustion requirement meets the goals of the prisoner and the prison alike. Id. at 94-95.

6

Circuit courts interpreting the PLRA have emphasized that dismissal of the claim is required if a plaintiff has failed to exhaust administrative remedies. In dismissing a claim for failure to exhaust, the Eighth Circuit in Chelette v. Harris, 229 F.3d 684, 688 (8th Cir. 2000) noted that "the statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them … we are not free to engraft upon the statute an exception that Congress did not place there." Moreover, in Johnson v. Jones, 340 F.3d 624, 628 (8th Cir. 2003) the Eighth Circuit again noted that "the language of section 1997 e(a) clearly contemplates exhaustion prior to the commencement of the action as an indispensable requirement, thus requiring an outright dismissal of such actions rather than issuing continuances so that exhaustion may occur."

In this District, a plaintiff's failure to comply with the deadlines in a grievance procedure has resulted in dismissal of the plaintiff's claims with prejudice for failure to exhaust administrative remedies. See Cable v. Wall, C.A. 09-439ML, 2011 WL 1211600 at *3 (D.R.I. Mar. 8, 2011); Jefferson v. Pepin, C.A. 16-016WES, 2017 WL 5198181 (D.R.I. Nov. 9, 2017) (report and recommendation stating that plaintiff's unexhausted claims would not withstand motion to dismiss).

### B. The RIDOC's Grievance Policy

In Jones v Bock, 549 U.S. 199, 218 (2007) the Supreme Court, in holding that local administrative grievance policies govern exhaustion under the PLRA, noted that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." In Rhode Island, such requirements are determined by the RIDOC. The RIDOC has a three-tiered grievance procedure wherein "all inmates, sentenced, awaiting trial, in disciplinary confinement, protective custody or on Community Confinement are

7

eligible to file grievances." See Exhibit A to Affidavit. Pursuant to this policy, grievable areas of facility life include "interpretation and application of policies, rules, and procedures of the facilities and/or Department," "individual employee and/or inmate actions, including any denial of access to the Inmate Grievance Procedure other than as provided herein," and "any other matter relating to … conditions of care or supervision." Id.

Inmates seeking relief for any of these qualifying grievances have access to relief at three levels. Id. The first level, which is a mandatory step, consists of an informal request to resolve the grievance. Id. If the grievance cannot be resolved informally, the grievance advances to the "formal 2-level inmate grievance procedure." Id. The two levels consist of: (Level 1) submission of the grievance to the Warden or the Warden's designee and, if not resolved at that level, (Level 2) submission to the RIDOC Director through the Departmental Grievance Coordinator. Id. Much like the informal request to resolve the grievance, both of these steps are mandatory. Id. Remedies available to a grievant who receives a favorable outcome include restitution or monetary compensation, changes in facility procedures, correction of inmate records, and other remedies as appropriate. Id.

### C. Hanson Has Failed To Exhaust His Remedies Under The Grievance Policy

As stated in the Affidavit of Grievance Coordinator Cory Cloud, Plaintiff has failed to exhaust his RIDOC administrative remedies pursuant to the RIDOC Grievance Policy. See Exhibit A: Cory Cloud Affidavit. Additionally, Plaintiff admits in his own Complaint that he has failed to exhaust the RIDOC Grievance Policy. ECF No. 1 at ¶ VII(D). In Section VII of his Complaint, Plaintiff acknowledges that he is subject to the

PLRA and confirms that the RIDOC has a Grievance Policy and Procedure in place. Id. at ¶ VII(B-D). In Part D of that section, the Plaintiff checked the "no" boxes twice when asked if he had filed a grievance. Id. Because a grievance policy with several remedies was available to Plaintiff Hanson, his failure to avail himself of this process and exhaust administrative remedies requires dismissal of his claim with prejudice.

**2. Plaintiff's Claims Are Barred Because Defendants Are Not "Person[s]" Under Section 1983**

Plaintiff's Complaint fails against Defendants Panerello and Grady in their official capacities because they are not "person[s]" within the meaning of section 1983. At the outset, it must be noted that none of the Defendants have been served in their individual capacities. ECF No. 13. Simply put, the Rhode Island Attorney General is not the registered agent for service of process for Defendants Panerello and Grady in their individual capacities, nor is there legal authority that permits the Attorney General to accept service for them in their individual capacities. See Ruiz v. State of Rhode Island et al., C.A. 16-507-WES (Memorandum and Order dated Jan. 22, 2018 at 5) (citing R.I. Gen. Laws § 9-31-9; 4A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1098 (4th ed. 2013) ("[S]imply delivering a copy of the papers to the agent . . . is not sufficient when receipt of the papers by the agent is not binding on the person to be served. . . .")).

Because only the official capacity Defendants have been served, Will v. Michigan, 491 U.S. 58, 71 (1989) controls. In Will v. Michigan, the Supreme Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." In reaching its decision, the Court first noted that "'in common usage, the term 'person' does not include the sovereign, [and] statutes employing the [word] are

9

ordinarily construed to exclude it.'" Will, 491 U.S. at 64 (citations omitted). Furthermore, the Court observed that the language of section 1983 "falls far short of satisfying the ordinary rule of statutory construction that if Congress intends to alter the 'usual constitutional balance between the States and the Federal Government,' it must make its intention to do so 'unmistakably clear in the language of the statute.'" Id. at 65 (citations omitted). Finally, in attempting to decipher congressional intent as to the scope of section 1983, the Court concluded that Congress did not intend for section 1983 to provide a federal forum for litigants seeking a remedy against a State for alleged deprivations of civil liberties. Id. at 70–71.

In Jones et al. v. State of Rhode Island et al., 724 F. Supp. 25, 28 (1st Cir. 1989), the First Circuit applied the Supreme Court's holding in Will, and held that "neither the State of Rhode Island nor any of its officials acting in their official capacities, are 'persons' that can be held liable under § 1983."

The instant case mirrors the above cases and compels an identical result. In the case at hand, Defendants Panerello and Grady have only been served in their official capacities. Because these Defendants are not "person[s]" within the meaning of section 1983, the Complaint must be dismissed with respect to these Defendants.

## V. **CONCLUSION**

For the reasons set forth herein, as supported by DOC Grievance Policy No. 13.10-2, the Affidavit of Cory Cloud, and the Plaintiff's own Complaint, Defendants' Motion to Dismiss should be granted. Moreover, Defendants Panerello and Grady, in their official capacities, are not "person[s]" within the meaning of section 1983. Accordingly, Defendants respectfully request that the Court dismiss the Complaint.

Respectfully submitted,

DEFENDANTS, in official capacity only,
By Their Attorney,

PETER F. KILMARTIN
ATTORNEY GENERAL

/s/ *Adam J. Sholes*_____
Adam J. Sholes, Bar No. 7204
Assistant Attorney General
150 South Main Street
Providence, Rhode Island 02903
(401) 274-4400 EXT. 2219
Fax No. (401) 222-3016
ajsholes@riag.ri.gov


**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that a copy of the within Motion was filed via the ECF filing system on this 27th day of Jun 2018 and that it is available for viewing and downloading. I also hereby certify that I mailed a copy of the foregoing Motion by first class mail, postage prepaid on this 27th day of June 2018 to:

**Allen J. Hanson,** *Pro Se*
ID# 129924
ACI – Intake Service Center
P.O. Box 8249
Cranston, RI 02920


/s/ *Adam J. Sholes*